When you're ready, Mr. Quillen. May it please the Court, I'm George Quillen, fully in Lardner for the appellant ENOCEAN. I'd like to reserve four minutes of my time for rebuttal. I intend to address ENOCEAN's receiver claims, then its means for receiving claims, and then the other ENOCEAN motions filed with the Board. In addition to what I argue today, we rely on our briefs. Overall, the Board erred, both on the law and on the facts. Its decision holding ENOCEAN's claims unpatentable should be reversed. Turning first to the receiver claims, contrary to law, the Board construed receiver as a means plus function limitation controlled by Section 112, Paragraph 6. The Board erred, as a matter of law, in failing to apply the legal presumption that claims lacking the term means as ENOCEAN's receiver claims lack. Of course, in the same application, there was a reception means for receiving claim, wasn't there? Claim 29. Yes, Your Honor, that's correct. There are several other claims that do recite means for receiving. The Board erred about those as well. If I may, I'll... Basically, it's a prior op rejection, right? Because there was a reference intervening between the date of the U.S. application and the German priority date, which he didn't get the benefit of. That's correct, Your Honor. And that had the same receiver disclosure as this ENOCEAN's German benefit, and PCT applications contain the same disclosure as their involved U.S. application. That's correct, Your Honor. Can I just fast forward a little and just globally look at this case, hypothetically, if we were to agree with you that receiver is sufficient structure, in other words, on the question of whether or not this means plus function claim, to say, no, these are not means plus function claims. Does that also answer the other question with regard to the means plus function claim? Do you understand my question? Because the Board struck down these claims, and then they struck down claims where there's no disagreement that these are means plus function claims. Correct, Your Honor. And you're appealing both of those. That's correct, Your Honor. So if we were to agree with you on the first point you're stressing, which is that the claims which the Board construed to be means plus function claims, and you're disputing that you're right, we agree with you, these are not means plus function claims because sufficient structure is recited in terms of a receiver. What impact does that determination have on the determination with respect to the means plus function claim? It shows that the Board's capable of getting it wrong, Your Honor. Does that automatically resolve that, or do you have to do another analytical step to say, since we've concluded that receiver is enough of a structure in the non-means plus function claims, then that means also that the disclosure of a receiver in the German application is necessarily enough structure for the means plus function claims. Do you understand what I'm saying? I think I'll give it a shot, Your Honor. It would be certainly related reasons on the means plus function claims, the claims 29 and the others that recite means for receiving. The Board also erred as a matter of law and erred on the facts. It erred as a matter of law by requiring the specification to expressly describe the structure that's being relied upon. The quick answer to the one more analytical step. You'd have to check and see if the structure that appeared in the claim without a means plus function claim is also found in the specification, because under 112.6, you do have to have corresponding structure in the specification or its equivalent, and so you'd need at least that one additional analytical step, wouldn't you? Yes. That's the answer to the question. Yes. Yes, Your Honor. Yes, Your Honor. Correct. And then the answer to that second question is that there is sufficient structure disclosed for the means plus functions. Why? Because the German application refers to a receiver. That's correct, Your Honor, and the Board, again, erred as a matter of law by requiring more than that. Webster Loom, 130 years ago, says what's known is as though it were laid out in the spec and delineated in the drawings. The evidence is that receiver is known. Our inventors didn't invent the receiver. They invented the thing that goes with it, the transmitter. The receiver is old, and it's been used as a term of structure for many, many, many years. Why is it stray here, do you think? I mean, this is on the record now, and I'm just wondering why. If you're correct, if we would agree with you, it would be comforting to try to discern why the Board got it wrong here. Is it because receiver is so, receiver for receiving is just so hard? I mean, it's a little, maybe an inch further than some of our cases, which have said that this is enough recitation of structure. I'm sure I don't have an adequate reason for the why, Your Honor. I guess I would hesitate, personally hesitate, to assign motives or motivations to what's going on in front of the Board. Didn't Judge Lurie give us at least a hint when he noted that you did have a means plus function claim, which might have led them to perceive that the receiver claims were also means plus function, and then there would be some question as to the adequacy of the disclosure of structure and the specification. That might be, Your Honor, but the very case that the Board cites in its decision, that very case sets out the rule that if a claim lacks the term means, the presumption is that it's not a means plus function limitation. What is the receiver receiving? The receiver is receiving radiation, right? And wavelengths along the electromagnetic spectrum. Yes, Your Honor. And do all receivers receive all wavelengths? Probably not. But the specification indicates certain wavelengths, doesn't it? Yes. Certain power requirements and that sort of thing, Your Honor. But again, the receiver is not new, it's not inventive. Aren't there various kinds of receivers? I'm not sure I understand, Your Honor. Aren't there various kinds of receivers? Certainly, Your Honor. A radio is a receiver. And yet, you go into your doctor's office and there's probably radiation there that has a different kind of receiver. We go back to Webster Loom, Your Honor. Yes, the answer to your question is yes, there are many kinds of receivers. We are having this discussion in the midst of professional football season. A quarterback throws a pass to somebody who might be wide or not, might be eligible or not. Well, that's not this art. Across town, there's a different appellate court, a federal appellate court, that handles bankruptcy cases. Well, there are receivers involved. Well, that's not what we're talking about. Webster Loom says that the term has meaning to those involved in the art. In this art, the term receiver has meaning. It connotes structure. The Garton reference, the Wikipedia article, the Williams declarations, the Berkutuum magazines, you can buy these things. The record has diagrams. If there's sufficient structure in the U.S. application, ipso facto, there is in the German application because the same word is used and therefore the reference should be ineffective. That's your point. Yes, Your Honor. That's correct. It's our position that the board erred, both on the law and on the facts. I won't beat that anymore. Turning to the other in-ocean applications that were pending, our position is that the board erred in dismissing rather than granting the in-ocean motion for benefit. On this record, it couldn't come out any other way. If you're going to agree with us that receiver is adequately supported, then certainly we have support in our claim. Our request for benefit ought to be granted. On the other in-ocean motion, the contingent one, even if the board was correct in holding unpatentable our claim 29, which was part of the alternative definition of the count, even if the board was right, we'd say they're not, but even if they were... we would have to remand for the board to consider them under your view of the case. On our motion one, Your Honor, the motion for benefit, although the board formally dismissed, rather than rule in so many words on that motion, effectively what they have done is deny that motion, saying that we're not entitled to benefit. That's how they are able to apply borough against us, because it's an intervening reference. If we've got support, as we do, back to our German benefit application, and we're entitled to benefit, then we should be given benefit of our earlier application. And finally, our last motion is the motion to exclude evidence. That too, the board dismissed, and we say that was wrong. They should rule on that motion. I'd be happy to address any other questions. Otherwise, I'll spare the panel. Thank you, Mr. Cohen. Mr. Byers. Very quickly, I think the operators of the radio telescope array on Telegraph Hill in New Jersey would be surprised that their receiver is the same thing as the receiver in the German application or in the Inocean application. Receiver is an extremely broad term, but the board itself says, page 18, the skilled worker would have been familiar with the design and principles of the types of components used in the claimed invention, including receivers. The board itself says that the person of ordinary skill is not going to know these components, both the design and the principles and the types and their utilization. In one sentence, they cover it all. That's correct, Your Honor. But the board went further to review the use of receiver by the appellant and in light of the German application. And the problem is not that receiver is known or not known in the art, and not that receiver is not known as a component, because certainly somebody can stick in a broad wiring diagram a box that says receiver. The problem is that it doesn't connote sufficient structure to get over the means plus function problem. It has to have structure there that's going to tell somebody exactly how to build the thing. The ordinary skilled worker would know how to use and configure such components, including the receiver. That's correct, Your Honor. But there's a difference between configuring the components and configuring the receiver itself, and that's the distinction here. It's a question of... They'd know how to use it, they'd know what it is, they'd know its principles and design. I'm struggling to understand what more they need. Perhaps I can provide, Your Honor, with an analogy. If you have a surgical procedure that requires shaving of a patient, if you're going to do brain surgery, it requires shaving of a patient beforehand, and it says as part of this operation, you use a razor. Somebody's going to be able to pick up a razor and know that a razor is used to remove hair, but it's not going to tell them whether or not it's a straight razor, is it a movable blade, is it an electric razor? Those are completely different structures, and the same thing is true of a receiver. A receiver performs a function... But I presume a surgeon knows how to use and operate a razor, and the board just told us that a person of ordinary skill would know which receiver and how to use it. What is lacking? What is lacking is the internal structure. What we're lacking is what's inside what this court in Blackboard called essentially a black box that performs a recited function. We don't know whether or not the receiver is digital. Is it analog? What other elements does it have? As a matter of fact, the evidence that a notion relied upon and that the court, that the board reviewed... But this isn't the point of advance. The reason for a means plus function claim is to gather all the applicable prior art that performs a particular function, recite it in your specification, and then you don't have to write 25 different claims for every specific receiver that might be used. Instead, you can recite a receiving means, give the structure in the specification, and you've covered it. Or in the case of the non-means plus function claims, you just recite receiver. And if a person of skill in the art knows how it's used, that insignificant element is covered, right? Knowing how it's used, Your Honor, doesn't provide the necessary structure to the receiver itself. And the notion itself said in its principle brief at page 23, relying upon the Williams Declaration that a radio receiver can be a simple circuit comprising certain items. But there's no definite structure provided for it in any of the specifications that a notion is relying upon. And once again, we're talking about a black box here, Your Honor. Doesn't the material in the specification that recites wavelengths provide enough information so that one skill in the art knows what a receiver is in context of this application? Functionally, Your Honor, yes. In terms of its function is to receive a certain wavelength of radio waves. Doesn't one skill in the art know how to create the structure to do that? It depends on the context that it's being used in, Your Honor. It depends on what the end result is going to be and what you're going to do with the signal, the strength of the signal, where the signal is coming from, your space limitations and the like. For example, I use, like I'm sure everybody in the courtroom does, a smartphone. A smartphone has a receiver in it. That receiver performs the same function as the receiver that a notion is claiming. But they're constructed of entirely different materials with completely different organizations because of the constraints on exactly what they're receiving and how they have to receive it and what they do with it after the fact. An ocean's, the evidence that an ocean provided to the court, the board that drove the board to make a determination that there was insufficient structure is a smattering of commercial use, which doesn't show a single structure. It actually has several different receiver structures on there. The other thing that the board relied upon, and this is all evidence that was placed before the board by a notion, are the Williams declarations and there's nothing in the Williams declarations at all to provide any information about the receiver. And there's no argument that a receiver is known in the art in terms of its functionality. I can talk to any radio expert and say that we've got a receiver. The next thing that's going to happen is that expert is going to now ask me well, what are you doing with it? What are the parameters? What are the specifications for it? How fast does it have to operate? There are a myriad of things that have to go into determining how that operates. In light of that, and because the receiver is only noted in the German application in a single reference that just says receiver, that drove the board to conclude that there was insufficient support in the German application to overcome the borough's application. And that's what we're really talking about. We're really talking about what's in the German application. If we disagree with respect to your argument concerning the U.S. application, doesn't that necessarily mean that the German application is adequate under 119, 112, and therefore the reference is removed? Only if the German application provides the structure necessary to define. But it's the same word. It's the same word. We agree that the U.S. application implies sufficient structure. Doesn't that settle the same inquiry with respect to the German application? Only to the extent that the German application actually is making the same functional use of receiver. And is it not? That's the problem here. Is it not? Isn't it the corresponding German application? Well, the corresponding German application once again only makes a single reference to receiver. As opposed to the numerous uses of receiver and receiving means in the Inotion application. And so, to be honest with you, it's very, very difficult to make that determination. And I think it would be very hard to say that simply because there's nothing there to tell you that it's being used for exactly the same purpose in the same manner. Just because there's only a single reference there. I mean, I can go back a hundred years and go to patent applications and issue patents for tires. But that doesn't necessarily mean that you're going to know whether or not that tire is constructed out of old canvas and rubber or if it's steel belted. Is it a truck tire? Is it on a split rim? It doesn't provide that amount of specificity. And that's what we're looking at. But more importantly is the question of... But we're talking about the same invention here. When I look at the US application it lists foreign priority data by number and that's exactly the same as the German patent application. So we're talking about the same invention. In some sense, yes. I agree with you. So the use of the term receiver and receiving is the same use as in the... It's the same functional use, yes. So to the extent that there would be sufficient structure found for that particular use that specifically corresponds to the German application then of necessity, yes. But a more important issue and my colleague didn't touch on this was the standard of review. We're talking about claim construction and we're talking about the board making a determination based upon the facts that are before the board. There's some discussion in Ocean's briefs about where the burden lies, where the burden doesn't lie. This is very simple and straightforward. The board is there as a specialty administrative board in order to make determinations about patents and claim interpretations because that's what they do and that's what they're good at. And for that reason, this court determined that unlike cases that come up from district courts, decisions of the board actually are given deference. So even though claim construction is reviewed de novo, the board has, especially in the area, the judges there do this day in and day out. And so that's why the deference is provided. And the other problem with this is that if we don't rely upon those determinations of fact and if we don't look at it through the eyes of the board, then we're in danger of forgetting the third person in the room, which is the public. If we allow an Ocean to grab backwards to broad functional items that have no sufficient structure to them, we're allowing them to take out of the public domain things that are too broad and don't have any specificity to them. And so I respectfully submit that the court needs to keep that in mind and give deference to the judgment of the board that there is no distinction between receiver and signal receiving means. And then following interpretation of all the evidence that was placed before it by an Ocean to make a determination that receiver just didn't have sufficient structure. Unless there are any further questions from the court. Thank you. Thank you. Mr. Quillen? Just briefly, Your Honor. Dr. Williams in his declaration refers to the Garton reference and quotes from the Garton reference. Part of that quotation comes from the Garton on A1947. That's the Garton reference. There's a paragraph at the bottom of the page where Garton refers to a receiver, a radio receiver. Quote, a simple circuit comprising a pickup, amplifier, rectifier, and go-no-go arrangement operating on receipt of a correctly coded signal. There's ample structure in the record to support the notion that a receiver connotes structure. Claim construction, the board is supposed to give claims their broadest reasonable construction as they would be understood by a person of skill in the art. The board's decision doesn't address at all the viewpoint of a person of skill in the art. There's no evidence that supports that. What we have from Dr. Williams is ample, a lot of evidence about what a person of ordinary skill in the art would perceive, would understand by these terms. We respectfully submit, Your Honor, that this court should reverse the board's unreasonable and legally erroneous claim construction of the receiver claims, reverse as well the board's erroneous decision not to accord a notion's claims the benefit of the adjournment PCT applications, and the erroneous decision to hold a notion's claims unpatentable. Thank you, Mr. Quillen. Our next case is